JONES, OBISPO DE LA IGLESIA CATÓLICA DE PUERTO RICO, DEMANDANTE Y APELADO, *v.* TORRELLAS Y TEXIDOR, DEMANDADOS Y APELANTE EL SEGUNDO.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre reconocimiento de censos y cobro de réditos.

No. 2002.—Resuelto en febrero 12, 1920.

CENSOS—ESCRITURA PÚBLICA—RECONOCIMIENTO DE CENSOS.—Ni la legislación antigua requería ni la vigente exige como requisito indispensable para la existencia de un censo, que constara su reconocimiento en escritura pública, siendo en tal virtud aplicable para determinar dicha existencia el principio de derecho que dice que ''de cualquier modo que parezca que una persona quiso obligarse, queda obligada.''

ID. — PARTE DEMANDANTE — CAPACIDAD PARA DEMANDAR — OBISPO CATÓLICO. — El Obispo de la Iglesia Católica Apostólica Romana en Puerto Rico, es jefe y representante de dicha Iglesia, con todos los poderes y facultades necesarios para el gobierno de la misma, y por tanto con capacidad para demandar en su nombre el reconocimiento de censos a ella pertenecientes y para gestionar el cobro de sus réditos.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. E. Campillo* y *J. Martínez Dávila.*

Abogado del apelado: *Sr. E. Acuña.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

Versa este caso sobre el reconocimiento de censos y cobro de sus réditos.  La acción fué establecida por Monseñor Jones, Obispo de la Iglesia Católica de Puerto Rico, y se dirigió contra los actuales dueños y poseedores de la casa No. 7 de la calle del Cristo, de la ciudad de San Juan, P. R. La demanda fué excepcionada y la excepción declarada sin lugar.  Visto el pleito, lo resolvió finalmente la corte de distrito en favor del demandante, limitando el cobro de los réditos a un período de cinco años, por estimar que habían prescrito los reclamados fuera de ese término.  Contra la sentencia dictada interpuso el demandado Alejandro Texidor el presente recurso de apelación.  Analizaremos los errores señalados por el orden en que lo han sido.

1. Sostiene el apelante que el tribunal sentenciador erró al desestimar la excepción previa, ya que no constando en la demanda que los censos fueran constituídos o reconocidos por escritura pública, es necesario concluir que no aduce hechos suficientes para establecer la acción que se ejercita.

En la demanda se alegó que en el año de 1841 mediante escritura que autorizó el escribano público Juan Basilio Núñez, Manuel Gerónimo González vendió a Luis María Padial una casa de dos plantas situada en la calle de Santo Cristo de la ciudad de San Juan, por la suma de siete mil pesos de la moneda entonces circulante, de los cuales el comprador satisfizo al vendedor tres mil cuatrocientos setenta y cinco, reservando en su poder los tres mil quinientos veinte y cinco restantes que reportaba la finca a censo y tributo, correspondientes a varios señoríos, los que se obligó a reconocer el comprador Padial; que posteriormente Padial cumplió lo prometido y reconoció los siguientes censos, pagando sus réditos mientras fué dueño de la casa: CIEN PESOS de capellanía que sirvió el Pbro. Esteban de Castro; QUINIENTOS PESOS pertenecientes a la Mesa Capitular; SEISCIENTOS VEINTE Y CINCO PESOS del Seminario Conciliar y Cátedra de San Ildefonso; CIENTO CINCUENTA PESOS del Hospital de Caridad de la Concepción; MIL CIEN PESOS de Capellanía que sirvió el Pbro.

Tomás de Castro; SETECIENTOS PESOS de los Padres Dominicos, y TRESCIENTOS CINCUENTA PESOS de la Cofradía del Rosario; que la casa fué vendida y pasó por los diferentes dueños que se nombran hasta llegar a los actuales demandados quienes la adquirieron por compra a doña Josefa Bonilla París mediante escritura pública otorgada el 7 de marzo de 1917; que en cada una de las ventas el adquirente ha deducido del precio respectivo el montante de los capitales a censo, con la sola excepción del asignado a los Padres Dominicos, cuyo señorío pasó al Estado Español, a virtud de las leyes desvinculadoras; que los propietarios de la casa pagaron los réditos de los censos hasta las fechas que se expresan, negándose a satisfacerlos la vendedora de los actuales dueños y éstos, no obstante las reiteradas gestiones de cobro por parte del demandante, y que los réditos devengados y no satisfechos ascienden a mil sesenta pesos de moneda de cuño español que era la circulante en la isla en el año de 1841.

No se dice, pues, en la demanda, de una manera expresa, que los gravámenes fueran reconocidos por Padial en escritura pública. Sostiene el apelante que la ley vigente en aquel entonces lo exigía, pero no la cita. El apelado niega la existencia de tal ley y reta al apelante a que la muestre. Nada hizo el apelante, ni nada hemos podido encontrar nosotros por nosotros mismos. Siendo ello así, y examinando los hechos alegados en la demanda a la luz del antiguo principio legal según el que "de cualquier modo que parezca que una persona quizo obligarse, queda obligada," opinamos que no cometió error la corte de distrito al desestimar la excepción del demandado.

2. El segundo error señalado se refiere al cometido por la corte a juicio del apelante al no haber desestimado la demanda por falta de personalidad del demandante.

Ya dijimos que la demanda se interpuso por Monseñor Jones, en su carácter de Obispo de la Iglesia Católica de Puerto Rico, y ahora añadiremos que en ella se expresó además que el demandante "está investido de todas las facul-

tades y poderes necesarios para el gobierno de la misma y entre ellos el de demandar el reconocimiento y declaración de derechos en favor de las entidades y establecimientos de la dicha Iglesia Católica de Puerto Rico que funcionan bajo la dirección de su Obispo, cual son entre otros la Mesa Capitular del Cabildo Catedral, el Seminario Conciliar, el Hospital de la Concepción, la Archicofradía del Rosario y la Colecturía de Capellanías vacantes." En el acto de la vista se presentó prueba testifical de que el demandante es el actual Obispo de la Iglesia Católica de Puerto Rico.

Esta cuestión ha sido estudiada y resuelta por esta Corte Suprema en contra del apelante. En el caso de *Jones, Obispo Católico de Puerto Rico* v. *El Registrador de la Propiedad,* el tribunal se expresó así:

"La representación de la Iglesia Católica Apostólica Romana en Puerto Rico, incumbía a su Obispo durante la dominación Española, y el Tratado de París celebrado entre los Estados Unidos y España no hizo innovación alguna sobre el particular, sino que por el contrario ha reconocido a la Iglesia sus derechos, aunque sin establecer preferencias en relación con otras religiones. Aún más, después de haber sido aprobada en 10 de marzo de 1904 la ley confiriendo jurisdicción original a este Tribunal Supremo para conocer sobre ciertas propiedades reclamadas por la Iglesia Católica Romana de Puerto Rico, y resolver acerca de las mismas, fueron promovidos diversos pleitos por el Obispo Católico Apostólico Romano de Puerto Rico en representación de su Iglesia, reclamando la propiedad de la Catedral, del Seminario Conciliar, de varias Iglesias Parroquiales, de Conventos y censos que pertenecieron a comunidades religiosas, de que se había incautado la Real Hacienda, y en todos esos pleitos fué admitida la representación del Obispo Católico Romano de Puerto Rico, siendo de notar que uno de esos pleitos o sea el relativo a la Iglesia de Ponce, fué decidido ejecutoriamente a favor del Obispo Católico de Puerto Rico por el Tribunal Supremo de los Estados Unidos, y que otros dos terminaron por medio de transacción a virtud de la resolución conjunta aprobada en 16 de septiembre de 1908, en cuya transacción intervinieron representantes de los Estados Unidos, de El Pueblo de Puerto Rico y de la Iglesia Católica Apostólica Romana de Puerto Rico, a la que representaba su Obispo, sin que la representación de éste fuera impugnada por los demás.

"Entendemos, pues, que los capitales a censo a favor del Seminario Conciliar, de la Fábrica de Catedral, de Capellanías vacantes, de la Mesa Capitular y del Hospital de Caridad, pertenecen a la Iglesia Católica Apostólica Romana de Puerto Rico; y por tanto, su representante legal, que es el Obispo, cuya representación es indiscutible, ha podido cancelarlos, siendo eficaz tal cancelación y por tanto, inscribible en el registro." 17 D. P. R. 224, 227.

Véanse también el caso de *Jones, Obispo Católico* v. *El Registrador,* 18 D. P. R. 126, y los en él citados.

3. El tercer error que señala el apelante es el cometido a su juicio por la corte al fijar la cuantía de los censos y al determinar las personas a favor de quienes se constituyeron. Sostiene que los únicos censos que según la prueba presentada constaban en la antigua Anotaduría de Hipotecas eran el de cien pesos de Capellanía de don Esteban de Castro, el de quinientos de la Mesa Capitular, el de seiscientos veinte y cinco de los Padres Dominicos, el de trescientos cincuenta de la Cofradía del Rosario y el de mil ochocientos sesenta del Ledo. Sirgado, y que habiéndose cancelado el del Ledo. Sirgado, y extinguido el de los Padres Dominicos, sólo quedaban los restantes, cuya validez actual en todo caso dependería de que sus dueños los hubieran trasladado, lo que no hicieron, a los libros del moderno registro de la propiedad.

El apelante se apoya en una parte de la prueba. En efecto de la certificación del Anotador de Hipotecas unida a la escritura de 1841, consta lo que él dice. Pero se presentó además el expediente sobre reconocimiento y expedición de póliza a instancia de Padial que obraba en el Archivo de la Notaría Eclesiástica, en el cual aparece otra certificación del Anotador de Hipotecas que contiene los gravámenes censuales especificados en la demanda.

Tampoco tiene razón el apelante en la segunda parte de su señalamiento de error. Según el registro en las inscripciones de las varias ventas que de la finca en cuestión se llevaron a efecto, consta que los contratantes fijaban el pre-

cio y que el comprador reservaba sin pagar una parte del mismo: la correspondiente al capital de los censos. Y este Tribunal Supremo resolviendo un recurso gubernativo en que estaba envuelta la cancelación de estos mismos censos, dijo:

"En el presente caso, como aparece suficientemente de los hechos anteriormente relacionados, el asiento, cuya cancelación se pide, no fué ni tomado directamente de los antiguos libros ni hecho por el registrador a su propia iniciativa sino que fué el resultado del deliberado, solemne y mutuo reconocimiento de dicho censo por parte de vendedores y compradores en los varios documentos que forman la cadena de títulos empezando por la escritura de 1871 y terminando con la de marzo de 1917, el comprador en cada caso, inclusive la dueña actual, se reservó una suma de dinero, que se dedujo del precio de venta, a fin de cubrir el gravamen pendiente que representa el consabido censo." *Texidor* v. *Registrador de San Juan,* 25 D. P. R., 878, 881.

4. Los otros errores señalados se refieren a los cometidos por la corte de distrito, según el apelante, al admitir como prueba cierta escritura y la declaración del testigo Luis Rodríguez, y al no eliminar la evidencia ofrecida en relación con los réditos.

A. La escritura de que se trata fué una otorgada el 24 de mayo de 1882, ante el Notario Guerra por don Félix Benet Rivera y doña Monserrate Cabrera, haciendo constar en detalle los censos que pesaban sobre la casa No. 7 de la calle del Cristo. Dicha escritura no se inscribió en el registro y en esta circunstancia basó su oposición la parte demandada.

Si existió error, no lleva consigo la revocación de la sentencia apelada porque no perjudicó a los demandados. Prescindiendo de dicha escritura, la sentencia se sostiene por la otorgada por Padial en 1841, por el subsiguiente reconocimiento detallado hecho por él mismo y por los reconocimientos directos de los compradores, inclusos los demandados, al reservar en su poder parte del precio representativo de los capitales a censo impuestos sobre la propiedad que adquirieron.

B. Sostiene el apelante que ''el cobro de un censo se justifica por la constancia o resguardo que dé el censatario al censualista, de acuerdo con lo dispuesto en el artículo 1519 de nuestro Código Civil vigente'', y que la corte erró al admitir evidencia testifical en este caso para probar tal extremo. Para concluir que no tiene razón el apelante, basta leer el precepto de ley invocado que dice así:

''El censualista al tiempo de entregar el recibo de cualquier pensión, puede obligar al censatario a que le dé un resguardo en que conste haber hecho el pago.''

Como expresa el apelado en su alegato, el precepto transcrito ''establece una facultad meramente potestativa en el censualista, que no implica concepto alguno de exclusivismo en orden a acreditar el pago de las pensiones de los censos.''

C. Tampoco cometió la corte error alguno al negarse a eliminar la parte de la declaración del testigo Luis Rodríguez que se refería al cobro de los réditos de los censos. Este testigo desde el año 1915 era Secretario del Tribunal de Cuentas del Obispado y como tal estaba capacitado para declarar que se había gestionado, sin resultado, el cobro a los demandados de los réditos que se reclamaron en el pleito.

Por virtud de todo lo expuesto opinamos que debe confirmarse la sentencia recurrida.

*Confirmada la sentencia recurrida.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.